UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMMODITY FUTURES TRADING
COMMISSION,

                  Plaintiff,

-against-

KEVIN CASSIDY, EDWARD
O'CONNOR, OPTIONABLE, INC.,
DAVID LEE AND ROBERT MOORE,

                  Defendants.

No. 08-CV-09962 (GBD)

ECF FILED

ORAL ARGUMENT REQUESTED

## DEFENDANT EDWARD O'CONNOR'S MEMORANDUM OF LAW IN REPLY TO PLAINTIFF'S OPPOSITION TO, AND IN FURTHER SUPPORT OF, HIS MOTION TO DISMISS THE COMPLAINT

**McCormick & O'Brien, LLP**

**Liam O'Brien**
**Marni Rae Robin**
**42 West 38th Street, Suite 701**
**New York, New York 10018**
**Tel: (212) 286-4471**
**Fax: (212) 504-9574**

*Attorneys for Edward O'Connor*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT IN REPLY .............................................................................................................. 2

    A. Plaintiff's Opposition Papers Fail to Show that the Complaint has Pled Options Fraud with the Requisite Particularity under Rule 9(b) .......................................... 2

        1. Omission of a Material Fact ............................................................................. 3

        2. Scienter ............................................................................................................. 7

    B. Plaintiff's Opposition Papers Fail to Show that the Complaint has Pled Fraud "in Connection with" a Commodity Options Transaction ............................................ 9

    C. Plaintiff's Opposition Papers Fail to Show that the Complaint has Pled Options Transactions in Interstate Commerce ................................................................... 10

CONCLUSION ............................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Cases**

*ATSI Communications, Inc. v. The Shaar Fund, Ltd.,* 493 F.3d 87 (2d Cir. 2007) ............ 8

*Basic Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978 (1988)............................................... 4

*CFTC v. International Financial Services (New York), Inc.,* 323 F.Supp.2d 482 (S.D.N.Y. 2004) ........................................................................................................................ 6

*CFTC v. R.J. Fitzgerald & Co.,* 310 F.3d 1321 (11th Cir. 2002) ........................................ 6

*In re Crude Oil Commodity Litig.,* No. 06 Civ. 6677, 2007 WL 1946553 (S.D.N.Y. June 28, 2007) ................................................................................................................... 9

*In re Natural Gas Commodity Litig.,* 358 F.Supp.2d 336 (S.D.N.Y. 2005) ....................... 6

*Rich v. Maidstone Fin., Inc.,* No. 98 Civ. 2569, 2001 WL 286757 (S.D.N.Y. March 23, 2001) ......................................................................................................................... 5

*TSC Industries v. Northway,* 426 U.S. 438 (1976) ....................................................... 3, 4

*United States v. Bilzerian,* 926 F.2d 1285 (2d Cir. 1991)................................................... 4

*Washington v. Twp. of Hillside City Council,* Civ. A. No. 06-3102, 2008 U.S. Dist. LEXIS 51229 (D.N.J. June 30, 2008) ...................................................................... 10

**Statutes**

Commodity Exchange Act § 4c(b), 7 U.S.C. § 6c(b) ..................................................... 5, 9

Commission Regulation 33.10, 17 C.F.R. § 33.10 ........................................................ 5, 9

Fed.R.Civ.P. 12(b)(6)........................................................................................................... 1

Fed.R.Civ.P. 9(b) ........................................................................................................ passim

Defendant O'Connor, by and through his attorneys McCormick & O'Brien, LLP, hereby submits this reply brief in support of his Motion to Dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b). O'Connor incorporates by reference herein all relevant arguments made and authorities cited by Optionable in its reply brief (hereinafter, "Optionable Reply") in support of Optionable's motion to dismiss the complaint (hereinafter, "Optionable MTD"). Supplemental arguments are set forth below.

## PRELIMINARY STATEMENT

O'Connor interpreted the claims against him to be grounded in the theory that O'Connor, as one of the "Optionable Defendants," colluded with Lee to deceive BMO's back office in their verification of Lee's bi-monthly valuations of his book of natural gas options. *See* O'Connor Memorandum of Law in Support of His Motion to Dismiss the Complaint, hereinafter "O'Connor MTD" at 1. However, in its various opposition papers, the CFTC explains that the only claim of fraud made against O'Connor is that he deceived "BMO about the independent nature of the quotes [he] provided [to BMO]" in that he made a material omission by "knowingly pass[ing] [Lee's] bid and offer quotes onto BMO personnel as if they were independent quotes obtained from the market."[1] CFTC's brief in opposition to Optionable's MTD (hereinafter, "Optionable Opp.") at 1. However, Plaintiff fails to allege facts that demonstrate that: (1) O'Connor agreed to conspire with Lee against BMO or (2) that O'Connor was even aware of Lee's purported

---

[1] In light of its narrowing of the fraud claim against O'Connor solely to material omissions and its failure to address O'Connor's point that the Compliant does not allege that the bid/offer quotes purportedly forwarded by O'Connor to BMO were inaccurate or outside the realm of market prices (O'Connor MTD at 8-9), Plaintiff arguably has conceded this point.

fraud;[2] and (3) showing that BMO apprised O'Connor of its IPV process and conveyed its expectation to O'Connor that he provide BMO with independently derived bid/offer quotes representing those available in the market. Plaintiff's argument is based on the alleged "state of mind" of BMO's personnel upon their receipt of bid/offer quotes rather than the "state of mind" of O'Connor.

The allegations contained in the Complaint against O'Connor do not allege fraud. At best, such allegations <u>may</u> suggest a claim for breach of contract between O'Connor and BMO, however, the CFTC does not have standing to bring such a claim on BMO's behalf and properly does not make such a claim here. A misleading statement or omission of material fact alone will not suffice to allege violations of the anti-fraud provisions of the CEA under the particularity standards of Rule 9(b). *See* O'Connor MTD at 7-8.

Finally, in its opposition papers, Plaintiff has attempted to reframe a number of O'Connor's arguments in a misleading fashion. We address some of these items below. However, rather than dissect each and every misleading statement made by the CFTC in its opposition papers, O'Connor respectfully refers the Court to his MTD.

## ARGUMENT IN REPLY

**A. Plaintiff's Opposition Papers Fail to Show that the Complaint has Pled Options Fraud with the Requisite Particularity under Rule 9(b)**

As is set forth in O'Connor's MTD, Rule 9(b) requires the CFTC to allege the following elements of options fraud with particularity: a misrepresentation, misleading statement or omission of a material presently existing or past fact made with scienter. *See* O'Connor MTD at 7-8.

---

[2] Indeed, Plaintiff concedes that the Optionable Defendants, including O'Connor, are not alleged to have engaged in Lee's purported mis-marking or mis-valuations or to have even known about his alleged mis-markings. Optionable Opp. at 11.

2

1.      <u>Omission of a Material Fact</u>

In order for the CFTC to satisfy the pleading standard for a material omission, the Complaint must allege facts showing that *there is a substantial likelihood that the omitted statement is one that a reasonable investor would consider important in making an investment decision*. O'Connor MTD at 9 (emphasis added). The alleged omission by O'Connor (i.e., his failure to tell BMO that the bid/offer quotes he purportedly forwarded to it originated from Lee and were not independently obtained from the market) is not material because it does not involve an investment decision. Plaintiff does not dispute this point, and it must be deemed to be conceded. Rather, Plaintiff, by engaging in a game of semantics, argues that the "materiality" of omitted information concerning a claim of commodity option fraud is not limited to investment decisions. CFTC's brief in opposition to O'Connor's MTD, hereinafter, "O'Connor Opp." at 4-5. Plaintiff would have the Court believe that the materiality standard applies to <u>any</u> <u>decision</u> regardless of its relation to the violation alleged.

In support of its argument, Plaintiff relies upon *TSC Industries v. Northway,* 426 U.S. 438 (1976), a case involving violations of proxy Rules promulgated under the federal securities laws. The Supreme Court determined that "[a]n omitted fact is material if there is a substantial likelihood that a <u>reasonable shareholder</u> would consider it important in deciding <u>how to vote</u>," *Id.* at 449 (emphasis added).  In other words, the material omission must be within the context of the violation alleged; i.e., what information would be significant to a reasonable investor concerning a proxy vote.

In the instant action, O'Connor is claimed to have committed options fraud under the CEA and its Regulations. Therefore, in order for information to be material in this

3

context, there must be a nexus between the material omission and an options transaction, i.e., an "investment decision." "The role of the materiality requirement is … to filter out essentially useless information that a <u>reasonable investor</u> would not consider significant, even as part of a larger "mix" of factors to consider in making his <u>investment decision</u>." *Basic Inc. v. Levinson,* 485 U.S. 224, 234, 108 S.Ct. 978 (1988) (expressly adopting the *TSC Industries* standard of materiality for violations of Exchange Act § 10(b) and Rule 10b-5 – anti-fraud provisions concerning securities transactions) (emphasis added). *See also, United States v. Bilzerian,* 926 F.2d 1285, 1298 (2d Cir. 1991) citing *TSC Industries,* 426 U.S. at 449; *Basic Inc.,* 485 U.S. at 231-32 ("The standard of materiality under the securities laws was set forth by the Supreme Court in *TSC Industries* [citation omitted]. An omitted fact is material if there is a substantial likelihood that a <u>reasonable shareholder</u> would consider it important in making an <u>investment decision</u>") (emphasis added). Therefore, in order to be material under this standard, the information allegedly withheld by O'Connor must have been considered by BMO, as an investor, to be significant in making an investment decision. No such allegations are made against O'Connor in the Complaint, and therefore, materiality is not properly pled.

      Further, to demonstrate having pled the "materiality" of the alleged omissions by O'Connor, Plaintiff cites to paragraphs in the Complaint that do <u>not</u> specifically relate to O'Connor (O'Connor Opp. at 5); the only paragraph cited that specifically relates to O'Connor is ¶ 56. Paragraph 56 does not make any allegations that O'Connor's alleged omission relates to any investment decision of BMO, and therefore, is immaterial as a matter of law (*see supra).* The remaining paragraphs cited by the Plaintiff contain generalized, conclusory allegations that relate generally to "brokers" or specifically to

4

other defendants/actors that fail to meet Rule 9(b) standards for particularity. "A complaint may not simply lump defendants together in vague allegations to meet the pleading requirements of Rule 9(b)." *Rich v. Maidstone Fin., Inc.,* No. 98 Civ. 2569, 2001 WL 286757, at *6 (S.D.N.Y. March 23, 2001).

Plaintiff's argument that O'Connor's purported omissions violated a fiduciary duty owed to BMO (O'Connor Opp. at 2-4) at best may support a claim for breach of fiduciary duty, for which the CFTC has no standing. Even assuming *arguendo*, that Plaintiff's interpretation of the law is correct, Plaintiff still misconstrues O'Connor's argument that O'Connor did not violate any fiduciary duty to BMO (O'Connor MTD at 10-11). Nowhere does the Complaint allege any specific facts (i.e., words or conduct) showing that either: (a) O'Connor was aware that BMO believed that the quotes he allegedly forwarded to the back-office were his independent views of bids/offers available in the market; or (b) O'Connor communicated to BMO that the quotes he allegedly forwarded to its back-office were his independent views of bids/offers available in the market. Without either of these predicate factual allegations, the Complaint fails to allege circumstances under which O'Connor arguably would have had a duty to inform BMO of anything to the contrary.

Moreover, in an attempt to circumvent the proper pleading standards under Rule 9(b) Plaintiff, without explanation or reference to supporting allegations, reframes its "fraud involving material omissions" claim into a nonsensical claim of "fraud by deceit." Optionable Opp. at 12-16. Here, the CFTC curiously misstates the elements required to prove options fraud pursuant to CEA § 4c(b) and Reg. 33.10 in order to argue that that a lesser, more flexible standard of particularity pursuant to Rule 9(b) should be applied to

5

the Complaint in this action where there are no allegations of material misstatements. Optionable Opp. at 14. However, the law is clear that "[t]o establish a violation of the CEA's anti-fraud provisions, the Commission must prove '(1) the making of a misrepresentation, misleading statement, or a <u>deceptive omission</u>; (2) scienter; and (3) materiality.'" *CFTC v. International Financial Services (New York), Inc.,* 323 F.Supp.2d 482, 499 (S.D.N.Y. 2004) quoting *CFTC v. R.J. Fitzgerald & Co.,* 310 F.3d 1321, 1328 (11th Cir. 2002) (emphasis added). How the CFTC can argue that fraud involving material omissions rather than material misstatements somehow creates an alternative claim of "fraudulent conduct" strains credulity. *See* Optionable Opp. at 14.

Moreover, the cases Plaintiff cites to support a lesser, more flexible pleading standard under Rule 9(b) do <u>not</u> involve violations of commodities or securities anti-fraud statutes, and as such, are inapposite here. Each of the cases cited by Plaintiff involve specific claims of <u>market manipulation</u>. S*ee, e.g., In re Natural Gas Commodity Litig.,* 358 F.Supp.2d 336 (S.D.N.Y. 2005). Because the complaints in the cited cases allege a scheme classically associated with fraud, but do not directly allege fraud, they are held to a more flexible standard applicable to <u>market manipulation claims</u> only, rather than the stringent Rule 9(b) standard for fraud violations. *See, e.g., In re Nat. Gas Commodity Litig.,* 358 F.Supp.2d at 343 ("[t]he Court concludes … that Plaintiffs must satisfy the flexible Rule 9(b) standard that other courts in this District have found applicable to market manipulation claims"). Whereas, here, O'Connor specifically is claimed to have violated the <u>anti-fraud</u> provisions of the CEA, and therefore, the strict pleading requirements of Rule 9(b) apply. Plaintiff's poorly veiled attempt to mislead and confuse

6

the Court concerning the appropriate pleading standard in this action unequivocally based in fraud should not be countenanced.

    2.    <u>Scienter</u>

Plaintiff also fails to demonstrate that scienter is sufficiently pled against O'Connor in the Complaint for Rule 9(b) purposes. In connection with O'Connor's alleged intent, Plaintiff fails to address that (a) there are no allegations showing that O'Connor knew or would have a basis for knowing that BMO's back office personnel were not aware that the pricing information originated with Lee; and (b) there are no allegations to support that O'Connor was aware of how the IPV process was to be conducted. *See* O'Connor MTD at 12. Therefore, these points must be deemed to be conceded by the CFTC. Such factual allegations are critical to demonstrate O'Connor's purported scienter in connection with the alleged fraudulent scheme.

In connection with this required element, Plaintiff attempts to confuse the Court. First, Plaintiff asserts that O'Connor contends that there is <u>no allegation</u> that he agreed to a scheme to deceive BMO. O'Connor Opp. at 5-6. This is a misstatement of O'Connor's argument. O'Connor correctly points out that there are no <u>specific</u> allegations that <u>O'Connor</u> agreed to a scheme to defraud BMO. O'Connor MTD at 13. Plaintiff's reference to ¶ 44 of the Complaint merely underscores O'Connor's point. Paragraph 44 states:

> After creating these fabricated quotes, Lee transmitted them to *brokers* who agreed to both (1) transmit Lee's bid/offer quotes to BMO employees who were responsible for independently verifying Lee's valuations …, and (2) portray Lee's bid/offer quotes as their own professional view of the current bid/offer spread they observed in the market….

(emphasis added). At the outset, this allegation does not <u>specifically</u> refer to O'Connor as one of the "brokers who agreed." Moreover, the allegations contained in ¶ 44 are purely

7

conclusory statements; they do not allege any particularized facts demonstrating the purported "agreement" between Lee and O'Connor. The CFTC merely assumes the existence of such an agreement in a conclusory fashion. However, the purported agreement is central to Plaintiff's claim of fraud by O'Connor. Generalized conclusory statements will not satisfy Rule 9(b). *ATSI Communications, Inc. v. The Shaar Fund, Ltd.,* 493 F.3d 87, 99 (2d Cir. 2007).

Second, Plaintiff argues that O'Connor mistakenly contends that the Complaint alleges that BMO delegated the duty of verifying Lee's options book to Lee. O'Connor Opp. at 5-6. However, O'Connor's contention that BMO identified to Lee the positions in his book that they instructed him to verify is a reasonable inference derived from the totality of the allegations set forth in the complaint. The Complaint is devoid of any allegations establishing how BMO initiated the IPV process with any of the Optionable Defendants and merely alleges that Lee forwarded fabricated bid/offer quotes to the brokers, which were then forwarded to BMO. *See, e.g.,* ¶¶ 43-44 of the Complaint. Regardless, none of these arguments raised by the CFTC in the O'Connor Opp. cure the defective pleadings with respect to O'Connor.

Additionally, Plaintiff references paragraphs contained in the complaint that contain merely conclusory statements of fact asserting the purported "knowledge" of the Optionable Defendants as a group or "their" purported agreement to engage in certain conduct. "Allegations that are conclusory or unsupported by factual assertions are insufficient." *ATSI Communications,* 493 F.3d at 99. "In situations where multiple defendants are alleged to have committed fraud, the complaint must specifically allege the fraud perpetrated by each defendant, and "lumping" all defendants together fails to

8

satisfy the particularity requirement." *In re Crude Oil Commodity Litig.,* No. 06 Civ. 6677, 2007 WL 1946553, at * 6 (S.D.N.Y. June 28, 2007). Thus, for these additional reasons, the Complaint fails to sufficiently allege scienter against O'Connor.

### B. Plaintiff's Opposition Papers Fail to Show that the Complaint has Pled Fraud "in Connection with" a Commodity Options Transaction

The CFTC argues that the Court should entertain a broad interpretation of the "in connection with" element for alleged violations of CEA § 4[c(b)] and Reg. 33.10. O'Connor Opp. at 7. Specifically, Plaintiff asserts:

> "O'Connor's … deceit was couched within [his] offer to Lee to enter into options transactions, and [he] intended for his conduct to result in the entry into options transactions" (*Id.* at 10); "the brokers transmitted Lee's bid/offer quotes to BMO's back office, holding them out as if they were the brokers' own independent assessment of the bids and offers available in the market, and failed to disclose that these quotes were Lee's rather than their own. They engaged in such deceit and fraud to attract Lee's business, in this way they were an integral part of the brokers' offer to Lee to enter into exchange traded options transactions" (*Id.* at 11); "The brokers agreed to deceive the BMO back office in exchange for Lee's entry into options transactions, which resulted in commission for the brokers" (*Id.* at 12).

The foregoing arguments demonstrate that the CFTC is <u>arguing</u> its case rather than pointing to specific allegations set forth in the Complaint that supports that such allegations were made against O'Connor. Where in the Complaint is the allegation that O'Connor engaged in the purported fraud by negotiating a *quid pro quo* exchange for Lee's future business? Or in exchange for a single exchange-traded options transaction? Or the commissions earned by O'Connor by one of these supposed negotiated transactions? Nowhere. Not a single paragraph of the Complaint is identified by the CFTC in support of these arguments; none of these arguments have been connected to any specifically alleged conduct by O'Connor in the Complaint because they don't exist. CFTC again misses the mark that fraud must be pled with particularity, and arguments

made in opposition to motions papers will not cure defective pleadings. *Washington v. Twp. of Hillside City Council,* Civ. A. No. 06-3102, 2008 U.S. Dist. LEXIS 51229 (D.N.J. June 30, 2008), at *39.

### C. Plaintiff's Opposition Papers Fail to Show that the Complaint has Pled Options Transactions in Interstate Commerce

Contradicting itself, Plaintiff argues that "it is not necessary to show that [O'Connor's] fraud relates to a specific options transaction" (O'Connor Opp. at 10), and "[w]hile the complaint does not explicitly state the transactions were in interstate commerce, it alleges facts that necessarily incorporate that allegation." O'Connor Opp. at 13. By its own words, Plaintiff acknowledges that the Complaint has failed to allege any options transactions in interstate commerce. As such, it has failed to plead this necessary element as well.

### CONCLUSION

For the foregoing reasons, in conjunction with those set forth in O'Connor's MTD, Optionable's MTD, and in Optionable's Reply, which are incorporated by reference herein, the Complaint in this action should be dismissed with prejudice as against O'Connor. As Plaintiff has not requested an opportunity to replead any allegations except those pertaining to options transactions in interstate commerce (*see* O'Connor Opp. at 14), Plaintiff should not be granted leave to do so by this Court.

Dated: New York, New York
April 15, 2009

**McCormick & O'Brien, LLP**

By: _____/s/ Liam O'Brien_____
Liam O'Brien (LO-3930)
Marni Rae Robin (MR-3461)
42 West 38th Street, 7th Floor
New York, New York 10018
Tel: 212-286-4471

                                        Fax:  212-504-9574
                                        lobrien@mcoblaw.com
                                        mrobin@mcoblaw.com

                                        *Attorneys for Defendant*
                                        *Edward O'Connor*

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 15, 2009 a true and correct copy of the Defendant Edward O'Connor's Memorandum of Law in Reply to Plaintiff's Opposition and in Further Support of his Motion to Dismiss the Complaint was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on April 15, 2009.

                                                    /s/ Liam O'Brien